THE OSKALOOSA STREET RAILWAY AND LAND COMPANY, Appellant, v. THE CITY OF OSKALOOSA, et al.

**Pleading: DENIAL OF ANSWER:** *Reply.* Under Code, section 2665, providing, that there shall be no reply, except where a counterclaim is alleged, or some matter is alleged in the answer, to which plaintiff claims to have a defense, etc., the allegations of the answer are taken as denied, in all cases where a reply is not permitted, and unless there is evidence to sustain them, they will be disregarded.

**PAVING ORDINANCE—STREET RAILROADS:** *Construction of statutes.* Acts Twenty-fifth General Assembly, chapter 7, repealing prior acts on the same subject-matter, and providing (section 10), that whenever any street railway may have been constructed, and shall remain on any street "which the council may direct to be paved," and when the owner of such railroad may be bound to pave any portion of such street, etc., and if the owner shall refuse, or fail to comply with the order to pave, then the portion of the costs assessable to such railway, shall be assessed against it, does not authorize requirements, that a street railway company, as a condition precedent to laying its track on a street which it has a right to occupy, and which is *already* paved, shall pay the cost of such paving.

*Appeal from Mahaska District Court.*—HON. A. R. DEWEY, Judge.

FRIDAY, OCTOBER 23, 1896.

ACTION to enjoin the defendant city and the other defendants, its officers, from interfering with the plaintiff in building, maintaining, and operating street railway tracks upon a certain part of East High avenue, in said city. Issues were joined, and upon hearing, a decree was entered denying the writ,

and dismissing plaintiff's petition. Plaintiff appeals.
—*Reversed.*

*John O. Malcom* and *Seevers & Seevers* for appellant.

*John C. Williams* for appellees.

GIVEN, J. — I. The only evidence offered and
introduced was that of Ordinances Nos. 91, 95, and
149 of the defendant city, and an agreement in open
court that the defendants were attempting to and
would enforce said Ordinance No. 149, unless restrained.
It is upon these ordinances, this admission, and the
admission in the pleadings, that the case must be
determined. The ordinances are lengthy, and we
will only set out so much thereof as is material to
this case. Ordinance No. 91 took effect January 30,
1890, and section 22 is as follows: "That there be
and is hereby granted unto the Oskaloosa Street Rail-
way and Land Company the right of way and privi-
lege to lay down tracks in and upon any of the streets
of the city of Oskaloosa, which shall constitute a single
and continuous line of street railway from and to cer-
tain points, which shall be designated and platted by
said company, and the plat approved by the city council,
and said route, when designated and approved, shall be
published as a part of this ordinance; and no rights
shall accrue to said company until their line is so
platted and approved by the city council. And said
company shall have authority to construct, maintain,
and operate street railways over and along their said
route, for the transportation of passengers and freight,
for the term of twenty years from and after the
approval of their line as aforesaid by the city coun-
cil." Section 4 contains the following: "When the
city council shall cause that portion of said streets
corresponding with and opposite to said tracks to
VOL. *99* Ia—*32*

be paved or macadamized, then said company shall either pave or macadamize, in the discretion of said city council, between the rails, and not less than one foot outside of the rails, for each track, where said track or tracks may be located, by, and at the expense of said company, and shall thereafter, during the existence of this charter, be kept in repair by said company or assigns." Section 5 provides that the company shall restore and plank street crossings, and maintain the same, and that all rails shall be steel, flat rails, to be used where streets are paved, and T rails where streets are not paved. Section 12 is as follows: "That said Oskaloosa Street Railway Company shall be exempt from taxation for the period of five years, from January 1, 1891." Section 15 provides: "The streets platted by said company as herein provided, and not built on within five years, shall be forfeited, so far as this charter is concerned." The plaintiff accepted the terms of this ordinance, and platted, and the city approved, the following, as the streets covered by the franchise: "First, Seventh, Eighth, Ninth, and A, D, I, Market, and Rock Island streets; High, First, Second, A, C, E, F, and G avenues." Under this authority the plaintiff constructed, and has ever since operated its railway on certain of said streets. Ordinance No. 95, which took effect February 21, 1891, is "An ordinance to provide for paving, curbing and grading of streets and alleys," and specifies at length the manner in which such work shall be let, performed, and paid for, and is in conformity with the statute. Section 8 provides for paying for the paving of intersections out of a general fund, to be raised by levy of a special tax on all the taxable property of the city. Section 19 provides for special assessment of the owners of property "fronting on said accepted improvement." No provision is made for taxing street railways. Ordinance No. 149, which

took effect May 26, 1894, and which, it is conceded, that defendants were attempting to, and will enforce, if not restrained, is as follows:

"Section 1.   If any street railway shall hereafter desire to lay its tracks upon any streets, or part of streets that are now paved, or to be hereafter paved, it shall first pay into the city treasury its *pro rata* share or cost of said paving, not to exceed six feet in width.   Said cost shall be *pro rata*, and determined by the original cost of the paving over which said street railway may pass.

"Sec. 2.   If any street railway shall fail to comply with the provisions of section (1) one of this ordinance, the tracks passing over said paved streets or parts of streets, shall be considered as an obstruction upon said streets; and power is hereby given to the street commissioner of the city of Oskaloosa, and it is hereby made his duty, to remove said street railway."

The plaintiff alleges in its petition, the passage and acceptance of said Ordinance No. 91, the approval of the plat made thereunder, and the construction and operation of the railway; that it now desires to construct and operate its railway "in, over, and upon East High avenue, and between Seventh and Ninth streets, in said city."   The petition shows that under said Ordinance No. 95, the city paved the street, which plaintiff now wishes to occupy, and that it threatens to enforce said Ordinance No. 149, unless plaintiff shall pay into the city treasury the cost of said paving, not exceeding six feet wide.   The defendants answered, admitting the passage and acceptance of Ordinance No. 91, the making and approval of the plat, the construction and operation of the railway, and that the part of High avenue in controversy is included in the franchise.   The defendants allege that in 1894, the city paved certain parts of other streets then and theretofore occupied by the plaintiff; that, on notice to the

plaintiff to pave its right of way on said streets, the plaintiff refused to do so, and abandoned said streets for railway purposes, and now attempts to avoid the payment of the tax or assessment by extending its line over the two blocks in controversy that have already been paved. Under section 2665, of the Code,* these allegations must be taken as denied, without reply; and, as there is no evidence to sustain them, they cannot be considered.

II. The contention is whether the defendants have a right to enforce said Ordinance No. 149, or, in other words, whether the city has a right to require the plaintiff to pay the cost of paving six feet in width of High avenue, already paved, as a condition precedent to its occupying that part of said street for railway purposes, That the city might have imposed such a condition in granting the franchise, may, so far as this case is concerned, be conceded; but Ordinance No. 91 fails to declare any such condition. Section 4, quoted above, clearly relates to paving streets already occupied by the plaintiff's tracks, and not to streets which the city had paved prior to occupancy by the plaintiff. There is no provision in that ordinance reserving to the city the right to charge the plaintiff for paving on streets paved previously to plaintiff's occupying the same. Whether, in such case, the city might require the plaintiff to replace the paving, and, in the event of refusal, recover damages therefor, is not involved in this case, nor discussed, and therefore, will not be determined. The powers of this city are derived solely from the statutes, and it can only exercise such powers as are thereby conferred, and in the manner prescribed, when the mode of their exercise is provided in the statutes. It is to the

* Code, section 2665, provides that "there shall be no reply, except (1) where a counter-claim is alleged; or (2) where some matter is alleged in the answer to which the plaintiff claims to have a defense, by the reason of the existence of some fact which avoids the matter alleged in the answer."

statutes that we must turn, to determine whether the
defendants may legally enforce said Ordinance No. 149.
The authority to tax street railway companies for pav-
ing was first conferred by section 1, chapter 16, Acts
Twenty-second General Assembly, upon cities of the first
class, cities of the second class having over seven thou-
sand inhabitants, and cities organized under special
charters. The power conferred is "to compel street rail-
way companies, whenever any street is ordered paved, to
pave and maintain in width three and one-half feet
each way, commencing at the center of the space
between the rails, and in case of failure to do so to
provide by ordinance for such paving and mainten-
ance, and for the manner of assessing against such
companies the cost thereof." This clearly relates
to streets "ordered paved," and not to streets already
paved.   The same is true as to section 10, chapter
14, Acts Twenty-third General Assembly, which by
chapter 12, Acts Twenty-fourth General Assembly,
is made applicable to all cities "containing, accord-
ing to any legally authorized census or enumer-
ation, a population of over four thousand," and all
cities existing under special charter.   From these
statutes it will be seen that, up to and including the
Acts of the Twenty-fourth General Assembly, no
power had been given to the city to tax street railway
companies for paving done previous to the occupancy
of the paved street by the railway company.   Chapter
7, Acts Twenty-fifth General Assembly, which repealed
said chapters 14 and 9, provides, in section 10, as fol-
lows:   "Whenever any railroad or street railway may
have been constructed and shall remain upon any street
which the council may direct to be paved, at the
time when such direction shall be given, and when the
owner of such railroad or street railway may be bound
to pave any portion of said street by law or ordinance
of the city, or by virtue of the provisions or conditions

of any ordinance of the city, under which said railway or street railway may have been constructed or may be maintained, and if the owner shall fail or refuse to comply with the order of the council to do such paving, then the portion of the cost of paving such street assessable upon such railroad or street railway, shall be ascertained, and shall be assessed against such street railway." Here, again, it will be observed, that the provision relates to streets which "the council may direct to be paved," and not to streets paved previous to occupation by the railway company. It will be observed, that in all these statutes, the mode by which the city may enforce the power given it to charge the railway company, is by assessment, and under the law, the cities may only proceed in that mode. Corporations "possess no power or faculties not conferred upon them, either expressly or by fair implication, by the law, which creates them, or by other statutes applicable to them. * * * It is the policy of the law to require of municipal corporations strict observance of their powers." 15 Am. & Eng. Enc. Law, 1039, 1041. "The grant of authority, from the legislature of the state to the council of the city, to levy an assessment for improvement, is as sacred as that which authorizes the imposition of taxes. The authorization should be explicit, and not leave the city council too wide discretion, because of vague language in the legislative grant." 10 Am. & Eng. Enc. Law, 277. Applying these familiar principles, it is quite clear, that the city of Oskaloosa has no power to charge the plaintiff on account of paving of the street which the plaintiff wishes to, and has a right to, occupy; and, if it had that power, it could not be done in the manner provided in said Ordinance No. 149. For these reasons, we think the decree of the district court must be REVERSED.