D. G. PYLE et al., Appellants, v. H. S. STONE, Appellee.

**PROCESS: Original Notice—Service—Overcoming Return.** The presumption is in favor of the return of the officer serving an original notice, and this presumption can only be rebutted upon clear and satisfactory evidence, and the burden is upon the party attacking the return to show, by direct and satisfactory evidence, that the presumption is not well founded. Evidence chiefly by witnesses interested held insufficient to overcome this presumption, which was also supplemented by positive testimony of the officer that service was made, and by other corroborative testimony.

**APPEAL AND ERROR: Trial De Novo—Influence of Finding of Trial Court.** On trial of case *de novo* in the Supreme Court on conflicting evidence, weight must, of necessity, be given to the finding of the trial court, in determining the credibility of witnesses.

*Appeal from Humboldt District Court.*—N. J. LEE, Judge.

MARCH 18, 1919.

AN appeal from the action of the court in refusing to

set aside a decree of foreclosure. Opinion states the facts. Plaintiffs appeal.—*Affirmed.*

*Clyde C. Coyle* and *A. D. Pugh,* for appellants.

*Lovrien & Lovrien,* for appellee.

GAYNOR, J.—This is a suit in equity, to cancel and set aside a judgment and decree of foreclosure, and to cancel and set aside a sale made under such foreclosure proceedings. The ground on which this is asked is that the court had no jurisdiction, because of the complete absence of the service of notice on the appellants. The defendant admits the mortgage and decree of foreclosure and sale, and denies all the balance of plaintiffs' petition. The court dismissed plaintiffs' petition on the merits, and plaintiffs appeal; and the only error assigned is that the court erred in doing so. The decree and judgment attacked were entered in the Humboldt County district court.

The record shows that, prior to the 3rd day of March, 1916, an original notice in due form was forwarded to the sheriff's office in Polk County, with directions to serve the same upon these plaintiffs, who then resided in Des Moines; that, upon receipt of the notice at the sheriff's office, it was turned over to one Mr. Henderson, a deputy sheriff, for service, and the record on file shows a completed service as to the plaintiff, Henry Pyle, in these words:

"State of Iowa, Polk County, ss.:

"Received the within notice this 3d day of March, 1916, and on the 3d day of March, 1916, I personally served the same on the within-named defendant, Henry Pyle, by leaving a copy at the house of Henry Pyle, in Des Moines Township, Polk County, Iowa, the same being his usual place of residence, with D. G. Pyle, a member of the family over

fourteen years of age, said Henry Pyle not being found in
Polk County, Iowa, after a diligent search.

"[Signed] S. M. Henderson.
"Subscribed and sworn to."

As to Mrs. Henry Pyle, known in the record as D. G.
Pyle, the return was as follows:

"State of Iowa, Polk County, ss:

"Received the within notice this 3d day of March, 1916,
and on the 3d day of March, 1916, I personally served the
same on the within-named defendant, D. G. Pyle, by of-
fering to read the original to D. G. Pyle, which she waived,
and delivered to her a true copy thereof.

"[Signed] S. M. Henderson.
"Duly verified."

This is purely a fact case. There is a direct conflict
in the evidence on all material matters, and the credibility
of the witnesses is directly involved. The record discloses,
without any dispute, that the plaintiffs,
Henry Pyle and his wife, D. G. Pyle, were
residents of Des Moines, up to and including
the 5th of March. Their testimony is that
they were residents of Des Moines until the 5th of March.
There is no controversy in the record that, prior to the
29th day of February, they resided on Grand Avenue in
said city, at what is known as No. 2411, and had resided
there for a number of years prior to that date. Hender-
son, the deputy, who served the notice, testified that he had
a distinct recollection of serving this notice; that he served
it on Mrs. Henry Pyle, known in the record as D. G. Pyle,
as stated in his return; that the service was made at No.
2411, where it is conceded that, prior to February 29th,
Henry and his family made their home; that he recognized
her as the same person he saw at No. 2411 on the morning
of the 3d of March, 1916, and the same person on whom he
made the service, as indicated by his return: and he was

1. PROCESS: orig-
inal notice: ser-
vice: overcom-
ing return.

very positive in his testimony that Mrs. D. G. Pyle, who was then in court, was the same person on whom he served the notice, as indicated by his return. We will not trouble to set out his testimony in full, but it shows that he had a clear recollection of the person on whom he served the notice, and that that person was the plaintiff in this case, Mrs. D. G. Pyle, and that the service was made on her at No. 2411.

It appears that W. V. Pyle, we think a brother of Henry Pyle's, lived at No. 2413, on the same street, and immediately west of Henry. Mrs. W. V. Pyle was called for the plaintiffs, and testified that, on the 3d day of March, a notice was served on her at No. 2413, in the morning of that day, by some officer, and she thinks it was this Mr. Henderson. She waived the reading, did not examine the notice, and laid the copies away. She says that her husband was not at home at the time this service was made; that the notice was not read to her, nor did she read it; that copies were left with her; that she had company, and did not care to have the notice read in the presence of the company; that she laid the copies aside, thinking to read them later; that her husband always got home the last of every week; that, when he came home, she looked for the papers, but could not find them, and never has found them.

Now the 3d of March was on Friday. This would bring the husband home on Saturday. The disappearance of these papers, if they were ever served on her, or if she ever received any papers of the character testified to, is exceedingly unfortunate for the plaintiffs in this case, or fortunate, and, at least, very peculiar. The service of notice by a sheriff or by his officers is not an everyday occurrence. It would have a tendency to arrest attention. If any papers were served, as she states, she makes no explanation of why or how they could have disappeared. She says she looked for them the next day, to show them to her husband, and

could not find them, but does not claim to have looked for them since. She fixes the date of service by saying she knows that the plaintiffs in this suit left on the 5th of March, and that the service was two or three days before that time; so she figures that it was the 3d of March that these notices were served on her, copies of which have been lost.

Mrs. Henry Pyle, known in the record as D. G. Pyle, testifies that, on the night of February 29th, she stayed at W. V. Pyle's home; on March 1st, at W. C. Biggs' home; that, on the 3d of March, she was at the Biggs' home until after lunch, then went down town, saw her husband and Mr. Biggs, and went back from the office to W. V. Pyle's home, and stayed there that night; that her husband was with her; that she was not at No. 2411 at any time during the 3d, and no one served any papers on her at either place. Both she and her husband, Henry, testified that all the household goods in No. 2411 were removed from the place on the 29th of February; that they never occupied the place after that; that it was vacant, and the blinds pulled down.

That certain goods were removed from No. 2411 on the 29th of February, is also shown by the testimony of an employee of the Merchants Transfer Company, who says he hauled three loads of household goods from No. 2411 on the 29th day of February, and put them in a car on the Minneapolis & St. Louis Railway Company's tracks; that they were not packed that day; that there had been packers there for three or four days; and that he took everything but a few old beds.

Neither of the Biggs was called as a witness, and their absence is not accounted for.

The Pyles all testified that the plaintiffs in this case left for Texas on the 5th of March, and they all testified that No. 2411 was vacant after the 1st of March.

Against this testimony is the testimony of Henderson,

who says that he called at No. 2411 on the morning of the 3d of March; that Mrs. D. G. Pyle came to the door; that he told her he had a notice from Humboldt County to serve on D. G. Pyle and Henry Pyle; that he asked her where Henry Pyle was, and she said, "In Texas;" that he asked her if she wanted the notice read, and she said, "No," and waived the reading; that he never served any notice at No. 2413; that, at the time he served the notice at No. 2411, he was in the house, and there was furniture there.

To this is added the testimony of one George Tymony, who says he was a chauffeur for Dr. Smouse, at 2323 Grand Avenue; that he was well acquainted with these plaintiffs, especially Mrs. D. G. Pyle; that he saw her around the premises at No. 2411 until at least the 5th of March; and that he thinks he saw her there later than that; that Dr. Smouse returned from California on the 1st of March; and that he cooked for the doctor about two weeks after that: that he saw Mrs. D. G. Pyle and her daughters come through their driveway to the street car real often,—every day,— while he was cooking for the doctor. He swears positively that Mrs. Pyle and her daughters were around No. 2411 as late, anyway, as the 5th of March; that he was well acquainted with Mrs. Pyle's daughters.

The burden of proof was on the plaintiffs. All presumption is in favor of the return of the officer. He was a disinterested party. He was charged with the duty of making an accurate and truthful return. The return is not conclusive, however, but may be rebutted; but it requires clear and satisfactory evidence to overcome this presumption, and we think that has not been done in this case. The return is supplemented by the sworn testimony of the officer, who, having no motive to falsify, states positively that the service was made as stated in his return. The burden is on the plaintiffs to show, by direct and satisfactory evidence, that the presumption in favor of the return is not well

founded.   See *Bowden v. Hadley*, 138 Iowa 711; *Mosher v. McDonald & Co.*, 128 Iowa 68;  *Farnsley v. Stillwell*, 107 Iowa 631.   The witnesses were before the court.   All the

2. APPEAL AND
ERROR : trial *de novo* : influence of finding of trial court.

witnesses for the plaintiffs, except Ridenour, show interest, and this interest tends to affect their credibility.   While the case is triable *de novo* here, we must, of necessity, when there is a conflict, give weight to the finding of the trial court, who had an opportunity of observing their demeanor while upon the stand, in trying to solve the conflict and to arrive at the truth.   As said before, this is purely a fact case.   Its solution depends upon the credibility of the witnesses and the weight to be given to their testimony.

We find no reason for interfering with the judgment of the court upon the facts.   In fact, we find much reason for discrediting the testimony of the plaintiffs and their witnesses.

The judgment and decree of the district court are—*Affirmed*.

LADD, C. J., PRESTON and STEVENS, JJ., concur.