Des Moines Coal & Coke Company et al., Appellees, v. Marks Investment Company, Appellant.

ORIGINAL NOTICE: Service—Presumption in re Return. The very strong presumption which prevails in favor of the correctness of the return of service of an original notice can be overthrown only by very clear and very satisfactory proof. Testimony reviewed, and held insufficient to overthrow the presumption.

*Appeal from Polk District Court.*—James C. Hume, Judge.

November 13, 1923.

Opinion on Rehearing March 14, 1924.

Suit in equity, to set aside a purported judgment at law, entered against the plaintiffs herein at the suit of the defendant herein. The ground of relief alleged is that no notice of suit was served on either of the plaintiffs herein (being the defendants therein), and that the court was, therefore, without jurisdiction to enter such judgment. Decree was. entered, setting aside the judgment and awarding to the defendant a recovery against the plaintiffs of $109.67, as for money due at the time the judgment· at law was entered. The defendant has appealed.—*Reversed.*

*Dunshee & Brody,* for appellant.

*Clinton L. Nourse,* for appellee.

Evans, J.—The action at law in which the judgment complained of was entered, purported to have been begun on February 17, 1920. The return of the sheriff upon the original notice purported to show due service of the same on the same date upon A. L. Clinite, as president of the Des Moines Coal & Coke Company, and upon Samuel Blount, as vice president of the Blount-Evans Coal Mining Company. It is the contention of the plaintiffs that this was a false return, and that no notice was, in fact, ever served upon either of said persons. On April 5,

1920, the defendants in said law action were adjudged in default, and judgment was entered against them for $783.22. No apparent attempt was made to collect said judgment until after the expiration of one year, after which time proceedings auxiliary to execution were begun. Thereupon, this suit was instituted.

The controlling issue in the case is one of fact: Was the return of service upon the original notice a false return? Clinite and Blount, as witnesses, each denied that any notice had ever been served upon them, or that they had ever heard of the purported suit or of the judgment rendered thereon until the auxiliary proceedings were begun. On the other hand, the deputy sheriff who purported to have served the original notice testified as a witness in support of the judgment, to the effect that he had a personal recollection of the fact of service. He also testified to the place, time, and circumstances attending the service upon each officer. Circumstances are made to appear in the record which lend some degree of corroboration respectively to each side. As corroborating the plaintiffs herein is the fact of the default itself; whereas, the claim sued on was resisted by the respective companies, prior to suit. It is further contended by the plaintiff that the amount claimed in the petition at law and the amount of the judgment entered was so exorbitant as to invite contest on their part, and that this is a corroborating circumstance. On the other hand, the defendant claims that, on February 19, 1920, one Duro, who was the managing officer of both plaintiff corporations, called at the office of this defendant and expressed his resentment at the suit. Duro concedes that he called at the office on that date and expressed resentment, not at the suit, but at the fact that the defendant had sent him a bill, claiming from him substantially the amount for which judgment was later entered. He testified that he did not at that time know that a suit had been instituted. On February 24, 1920, he wrote a letter to this defendant, advising that he had tendered the amount due to the Consumers Ice Company, as the proper persons to receive the same. The amount thus tendered was $70.

It is well settled in this state, and doubtless in all other jurisdictions, that a very strong presumption obtains in favor

of the return of an officer, and that it cannot be impeached except by very clear and satisfactory proof. *Ketchum v. White,* 72 Iowa 193; *Wyland v. Frost,* 75 Iowa 209; *McWilliams v. Robertson,* 180 Iowa 281; *Pyle v. Stone,* 185 Iowa 785; *Mosher v. McDonald & Co.,* 128 Iowa 68; *Farnsley v. Stillwell,* 107 Iowa 631. The question here is whether the plaintiffs herein have produced that quantum of proof necessary to annul the return of the officer and to contradict his testimony as a witness. The more important details of fact may be stated briefly.

The Des Moines Coal & Coke Company, the Blount-Evans Coal Mining Company, and the Des Moines Ice & Fuel Company were three kindred corporations, each and all of which were largely owned and managed by the same persons in interest. The first to be organized was the first here named. In 1919, it turned over its business to the Blount-Evans Coal Mining Company, but continued its corporate existence. In 1919, the Blount-Evans Coal Mining Company turned over its business to the Des Moines Ice & Fuel Company, but continued also its own corporate existence. The first named company had rented office space in 1916 by becoming a subtenant of the Consumers Ice Company. By its terms, the lease was to expire March 1, 1920. In the lease held by the Consumers Ice Company, it was provided that, in the event of sale of the premises, the lease might be terminated upon 30 days' notice. In September, 1919, the premises were sold to the defendant herein. The lease of the Consumers Ice Company was properly terminated on October 25, 1919. The plaintiff herein and the Des Moines Ice & Fuel Company continued in nominal possession, at least, of their office space until some date in December, 1919. This defendant claims the rental value of the office space during the time that it was occupied by these plaintiffs after October 25, 1919. Duro had been the general manager of the sales department of all three corporations, and was the general manager of the business done in the city office. All the negotiations prior to suit had by this defendant were with Duro. Clinite had only recently bought into the company, and had no active connection with it prior to January 1, 1920. He had never had anything to do with any of the business at the office in question, this having been vacated before his active connection with the corporation. Blount's

activities were with the production end of the business, and he had nothing to do with the city offices or with the renting of the same. It is the theory of fact advanced by the defendant that, when Clinite and Blount were served with notice, they would naturally advise Duro of the claim made, and in view of their ignorance of the whole matter, would expect Duro to look after it; that this was what they probably did do; and that this was the prod that stirred the resentment of Duro and brought him to the office of the defendant on February 19th, and stimulated his letter of February 24th.

The evidence relied upon by these plaintiffs to impeach the return of the sheriff upon the original notice was as follows: Clinite testified:

"To my knowledge, I was not served with a notice of suit in the case of Marks Investment Company v. Des Moines Coal & Coke Company and Blount-Evans Coal & Mining Company at any time. I think I know the importance of a notice of that character, and what the effect would be if no response was made to it, as to a default. I think I knew that in February, 1920, and I do not remember any such notice."

He also testified in rebuttal as follows:

"I heard the evidence of Mr. Mose Clayman, that he served me with notice of suit, and since hearing it, I say that neither he nor anybody else served me with any notice at any time."

Blount testified:

"No, sir, I do not think I was served with original notice by anybody of a suit brought by the Marks Investment Company v. the Des Moines Coal & Coke Company and the Blount-Evans Coal & Mining Company on the 17th day of February, 1920. I believe I never had but two notices served on me in my life, one about ten years ago and one about twelve. I did not know there was such a suit pending at any time."

Duro also testified that he never knew that there was a suit pending until more than one year after judgment was entered.

Is the foregoing evidence sufficiently strong to overcome the great presumption in favor of the return and the supporting evidence of the deputy sheriff as a witness, giving the detailed circumstances surrounding the service? A reference to our previous cases above cited will disclose that stronger evidence

than appears herein was held to be insufficient for such purpose. We are not unmindful of the possible weight of corroborating circumstances. One of these relied upon by the plaintiffs is that the judgment was allowed to sleep for the period of one year before execution was taken. It is urged that this circumstance shows that the judgment plaintiff was conscious of infirmity in his judgment, and that he was awaiting the expiration of time to cure the same. This delay is partially explained by the fact that the judgment defendants had no visible property. Moreover, the judgment plaintiff could gain nothing by the expiration of time. If no notice had in fact been served, the judgment was void, and could be attacked on that ground in equity quite as readily after one year as it could have been by motion or application before the expiration of one year. Counsel for the judgment plaintiff, as a witness herein, frankly conceded that he was himself surprised at the default, in that he had expected a contest. This circumstance would tend to corroborate the judgment defendants in their claim that they knew nothing about the suit. On the other hand, the surprise of counsel resulted in an inquiry by him of the deputy sheriff as to whether he had made the service. The circumstances must have been fresh, at that time, in the mind of the deputy sheriff. It is not readily conceivable that this officer could have had any motive or could have been willing either to deceive counsel at that time or to ignore his solemn duties as a public official. If he had, in fact, made a mistake, he could not have been ignorant of it by forgetfulness or otherwise, after such reminder of an event so recent. We are impressed that the probabilities of forgetfulness or oversight are somewhat greater as against Clinite and Blount than they are as against the deputy sheriff. Whether, in view of their own want of knowledge, they may have called the attention of Duro to the matter, by phone or otherwise, is a mere matter of speculation, which imposes no burden of proof upon the defendant herein.

It is also contended by the plaintiffs that the judgment entered against them was exorbitant and clearly unlawful, and that this is a circumstance to be considered. Such circumstance, if proved, is entitled to substantial weight.

Plaintiffs have predicated their claim for relief on the sole

ground of the invalidity of the judgment, as being wholly without jurisdiction, for want of service of original notice. They have not asked for a new trial. They have not alleged fraud, casualty, or misfortune, as a ground of relief.

We feel compelled to hold, therefore, that the evidence for the plaintiff, either direct or circumstantial, was not of that clear and satisfactory character required by the well settled law of the state so as to justify the rejection of the sheriff's return upon the original notice. The decree entered below must accordingly be, and is, reversed.—*Reversed.*

PRESTON, C. J., ARTHUR and FAVILLE, JJ., concur.